UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN S. MCCARTHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 5594 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| VILLAGE OF BARRINGTON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen McCarthy brings this action alleging deprivation of her constitutional rights against the Village of Barrington (the "Village"), the Board of Trustees of the Village of Barrington (the "Board"), Karen Darch, Jason Lohmeyer, Todd Sholeen, James Daluga, Jeff Lawler, Greg Summers, Jennifer Tennant, and Natalie Ossowski (collectively, the "Village Defendants"). (R. 20, Am. Compl. ¶¶ 78-112.) She also asserts that Defendants Kara O'Dempsey and Adam O'Dempsey violated Illinois' Zoning Enabling Act ("ZEA"), 65 ILL. COMP. STAT. 5/11-13-15. (*Id.* ¶¶ 113-19.) Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Village Defendants move to dismiss only the claims alleging deprivation of Plaintiff's constitutional rights. (R. 26, Mot.) For the reasons stated below, the Village Defendants' motion is granted, and Plaintiff's remaining state-law claim under the ZEA is dismissed because the Court declines to exercise supplemental jurisdiction over that claim.

## RELEVANT FACTS

Plaintiff is a resident of Barrington, Illinois. (R. 20, Am. Compl. ¶ 4.) The Village is a municipal corporation located in Cook and Lake Counties, Illinois, and the Board is the legislative body for the Village. (*Id.* ¶¶ 5-6.) Village Defendant Darch is the president of the

Board and a trustee of the Board, and Village Defendants Lohmeyer, Sholeen, and Daluga are also trustees of the Board. (*Id.* ¶ 7.) As for the remaining Village Defendants, Lawler is the chief administrative officer of the Village, Summers is the director of development services for the Village, Tennant is the assistant director of development services for the Village, and Ossowski is the planning and zoning coordinator for the Village. (*Id.* ¶¶ 8-11.) Defendants Karen and Adam O'Dempsey (collectively, the "O'Dempseys")—a married couple—are Plaintiff's neighbors. (*Id.* ¶¶ 13-16, 28.)

In January 2015, the O'Dempseys purchased a property located on a lot that adjoins Plaintiff's property. (*Id.* ¶¶ 13, 28-29.) On March 6, 2015, the O'Dempseys submitted a building permit application to the Village for demolition of the existing house on their property so that they could build a new house in its place. (*Id.* ¶¶ 30-31, 39, 41-42, 60.) Plaintiff asserts that the O'Dempseys' construction plans incorrectly classified space on the second floor of their planned house as "attic space" to skirt floor space limitations established by Village zoning ordinances. (*Id.* ¶¶ 32-35, 46-48.) Plaintiff claims that the Village Defendants "knew or should have known" of the misclassification, yet they issued a building permit to the O'Dempseys allowing them to proceed with construction without requesting a variance. (*Id.* ¶¶ 36, 39, 64, 74.) Plaintiff alleges that the Village Defendants approved the O'Dempseys' building permit "knowingly and without rational basis[.]" (*Id.* ¶ 74.) The O'Dempseys finished construction of their house in August 2016. (*Id.* ¶ 60.)

Plaintiff claims that the O'Dempseys' house was the only "known case" in which the Village approved a building permit for a house whose floor area exceeded the limits set forth in the Village's zoning ordinances. (*Id.* ¶ 86.) Plaintiff also claims that she is "similarly situated to homeowners . . . who abut properties where the property owners['] planned construction . . .

2

would result in a departure from ... the Village's ordinances, and were required to apply for and receive a variation permit." (*Id.* ¶ 87.) She points to the Village's alleged issuance of a building permit for a new house in June 2016 in which the Village allowed that house to exceed floor area limitations after a public hearing and grant of a variance. (*Id.* ¶ 88.)

Plaintiff asserts that the Village Defendants thwarted her attempts to ascertain whether the O'Dempseys' new house complied with zoning ordinances, and that they denied her access to Village documents. (*See id.* ¶ 51.) Plaintiff alleges that on May 9, 2016, she was told at a Village Board meeting that she could no longer view the Village's documents without a request pursuant to the Freedom of Information Act and prior approval from the Village's attorney. (*Id.* ¶¶ 49-51.) Plaintiff claims that she was then escorted out of the building by Village police. (*Id.* ¶ 51.) On May 17, 2016, Plaintiff then allegedly received a letter from Village Defendant Lawler, which stated that Plaintiff could not visit Village Hall without an appointment. (*Id.* ¶ 52.) Plaintiff also claims that the very next day, she received unsolicited documents from the Village, including but not limited to plans of the O'Dempseys' house as it was built that "create a misleading appearance of compliance with" the Village's zoning ordinances. (*Id.* ¶¶ 54, 59.)

## PROCEDURAL HISTORY

On July 31, 2017, Plaintiff filed her initial complaint. (R. 1, Compl.) Plaintiff filed her first amended complaint on October 18, 2017, which alleges three causes of action under 42 U.S.C. § 1983 based on deprivation of her constitutional rights, and one cause of action alleging a violation of the ZEA. (R. 20, Am. Compl. ¶¶ 78-119.)

Count I claims that the Village Defendants violated Plaintiff's constitutional right to equal protection because they allegedly discriminated against her by failing to enforce zoning ordinances against the O'Dempseys. (*Id.* ¶¶ 78-93.) In Count II, Plaintiff alleges that the Village

3

Defendants violated her procedural due process rights under the Fourteenth Amendment because they failed to require the O'Dempseys to apply for a variance, which would have resulted in a public fact-finding hearing concerning the O'Dempseys' construction plans. (*Id.* ¶¶ 94-104.) Count III asserts that the Village Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights by "arbitrarily" and "unreasonably" approving the O'Dempseys' building permit and by failing to enforce the Village's zoning ordinances. (*Id.* ¶¶ 105-12.) Finally, in Count IV, Plaintiff alleges that the O'Dempseys violated the ZEA by constructing a house in violation of the Village's zoning ordinances. (*Id.* ¶¶ 113-19.)

On November 14, 2017, the Village Defendants filed a motion to dismiss Counts I through III of the amended complaint. (R. 26 Mot.) As to Count I, they argue that Plaintiff fails to allege an equal protection claim because she does not plausibly allege that the Village Defendants intentionally targeted her or that they lacked a rational basis for their approval of the O'Dempseys' new house. (R. 27, Mem. at 11-14.) The Village Defendants argue that the Court should dismiss Counts II and III because Plaintiff has failed to exhaust available state court and administrative remedies as is required to maintain constitutional due process claims in federal court that arise from a municipality's zoning decision. (*Id.* at 7-11.) The O'Dempseys have not filed a motion to dismiss or any other dispositive motion.

In response, Plaintiff argues that the Court should deny the motion to dismiss as to Count I because she plausibly alleges that the Village Defendants approved the O'Dempseys' new house without any rational basis and intentionally discriminated against her by "burdening her with an unlawful structure next door." (R. 35, Resp. at 4-12.) With respect to Counts II and III, Plaintiff contends that the Court should deny the motion to dismiss because she is not required to exhaust available state-court and administrative remedies. (*Id.* at 12-14.)

4

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation omitted). In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must allege enough factual information to state a claim to relief that is plausible on its face. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When reviewing a 12(b)(6) motion, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Mere conclusory statements, however, are insufficient to survive a motion to dismiss, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citation omitted).

## ANALYSIS

### I. Count I: Equal Protection Claim

Plaintiff alleges that the Village Defendants violated her right to equal protection under the Fourteenth Amendment because they failed to enforce zoning ordinances against the O'Dempseys, "obscured the [O'Dempseys'] violations," and "intimidated" her with the letter they sent her on May 17, 2016. (R. 20, Am. Compl. ¶ 79.) The Equal Protection Clause "guards against government discrimination on the basis of race and other immutable characteristics, but it

5

also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016). "Courts have understood that if class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). "To prevail on a class-of-one equal protection theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018) (citation and internal quotation marks omitted). "[F]ederal courts," however, "are not zoning boards of appeal." *Miller v. City of Monona*, 784 F.3d 1113, 1119 (7th Cir. 2015) (citation omitted). "State and local land-use decisions are entitled to great deference when constitutional claims are raised in federal court." *Id.* (citation and internal alteration omitted). To prevail, a class-of-one plaintiff must negate "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 1121 (citation omitted). "[A]t the pleadings stage, all it takes to defeat a class-of-one claim is a conceivable rational basis for the difference in treatment." *Id.* (citation, emphasis, internal quotation marks, and alterations omitted).

"Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently." *Id.* at 1120 (citation omitted). "To be similarly situated, a comparator must be identical or directly comparable to the plaintiff in all material respects." *Id.* (citation and internal quotation marks omitted). In the absence of alleging a similarly-situated comparator, a class-of-one plaintiff must allege facts for which "reason and common sense provide no answer" as to why the plaintiff was

targeted that "could be considered a legitimate exercise" of discretion. *Id.* at 1121. For example, a plaintiff adequately pleaded a class-of-one claim where he alleged that police officers from a single unit issued 24 tickets to his car over 14 months and some of the tickets were inconsistent with each other, implying that the plaintiff's car was in two places at once or simultaneously double-parked and parked on a sidewalk. *Geinosky*, 675 F.3d at 745-49.

The Village Defendants argue that Plaintiff fails to plausibly allege a class-of-one equal protection claim, (R. 27, Mem. at 12), and the Court agrees. To the extent Plaintiff's class-of-one claim is based on the Village Defendants' approval of the O'Dempseys' house, Plaintiff's claim fails because she does not allege any action that the Village Defendants took against her personally. *See Jackson v. Vill. of W. Springs*, 612 F. App'x 842, 846-47 (7th Cir. 2015) (affirming dismissal of class-of-one claim because the plaintiff did "not allege that he ha[d] suffered harm uniquely intended for him"); *Reget v. City of La Crosse*, 595 F.3d 691, 696-97 (7th Cir. 2010) (finding that the plaintiff's class-of-one claim based on the city's failure to enforce his complaints against others was "backward," because the plaintiff "had to show that *he* was cited under the ordinance and a similarly situated ordinance violator was not"). Rather, she alleges that the Village Defendants treated the O'Dempseys more favorably than property owners—other than herself—who the Village required to secure a variance. (R. 20, Am. Compl. ¶¶ 86-88.) "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all." *Tuffendsam v. Dearborn Cty. Bd. of Health*, 385 F.3d 1124, 1128 (7th Cir. 2004) (citation omitted). There can be no class-of-one claim based solely on a municipality's failure to enforce local laws "at the plaintiff's behest." *Id.*; *see also CBS Outdoor, Inc. v. Vill. of Plainfield*, 38 F. Supp. 3d 896, 904-08 (N.D. Ill. 2014) (in a case related to a dispute over village ordinances,

observing that "simply failing to prosecute all known lawbreakers" whether because of "ineptitude" or a lack of resources may result in "some being punished and others getting off scot-free," but such "selective prosecution, although it involves dramatically unequal legal treatment, has no standing in equal protection law" (citation omitted)). Accordingly, Plaintiff's class-of-one claim fails because she does not allege any plausible facts indicating that she was targeted by the Village Defendants; rather, she merely alleges that the Village Defendants failed to enforce zoning laws at her behest, which, standing alone, does not give rise to a viable class-of-one claim. *See Tuffendsam*, 385 F.3d at 1128; *Jackson*, 612 F. App'x at 846-47.

Additionally, there is a conceivable rational basis for the Village Defendants' issuance of a building permit to the O'Dempseys' given the facts pleaded in the amended complaint. Plaintiff alleges that the O'Dempseys sent a letter to the Village Defendants on March 18, 2015, representing that the O'Dempseys intended to comply with the Village's zoning ordinances,[1] and that the Village issued a building permit to the O'Dempseys in August 2015. (R. 20, Am. Compl. ¶¶ 34, 39.) Plaintiff alleges no facts, however, plausibly suggesting that the Village had reason to believe the O'Dempseys were lying in their letter. Instead, Plaintiff alleges that, during the time between the O'Dempseys' March 18 letter and issuance of the building permit, she learned of information that discredited the O'Dempseys' March 18 letter. (*Id.* ¶ 37.) She does not, however, allege that the Village Defendants were also privy to this information. (*See id.*) In addition, after

---

[1] Plaintiff alleges that, in the letter, the O'Dempseys represented that they "do not intend to finish nor will [they] finish the attic to create livable space. The attic will remain attic. The closet space in the upstairs Master Bedroom will not reach or exceed a ceiling height of 7 feet." (R. 20, Am. Compl. ¶ 34.) Plaintiff alleges that the initial proposed "attic space" in the O'Dempseys' house caused its noncompliance with zoning ordinances because it included livable space, (*id.* ¶¶ 32-35), and a reasonable reading of this letter could lead to the conclusion that the O'Dempseys no longer intended to build an attic with livable space such that the attic would not comply with the Village ordinances' definition of "attic." Plaintiff alleges that the intent of this letter was to "elide" violations of zoning ordinances, (*id*), but she does not allege that the Village Defendants were aware of any facts from which they could ascertain any such intent.

August 2015, Plaintiff alleges that the plans for the O'Dempseys' house "were regularly changing" and made the house "appear to, but not actually, satisfy" the Village's zoning ordinances. (*Id.* ¶¶ 47-48.) Plaintiff herself alleges that she was not entirely sure whether the plans complied with zoning ordinances, claiming that she "*believed* that the drawings did not match" the house that was being constructed, and that "the drawings raised *the possibility* that the putative 'attic space' was misclassified[.]" (*Id.* ¶ 47 (emphases added).) Thus, Plaintiff's allegations reflect that the Village Defendants could have approved of the O'Dempseys' new house based on the O'Dempseys' letter or the "regularly changing" plans that appeared to comply with the Village's ordinances, both of which are conceivable, rational bases for the Village Defendants' actions and warrant dismissal of Plaintiff's class-of-one claim. *See Miller*, 784 F.3d at 1121.

The remaining grounds for her class-of-one claim are her allegations that the Village Defendants "obscured the [O'Dempseys'] violations" and "intimidated Plaintiff" by sending her a letter on May 17, 2016, accusing her of "unprofessional conduct" and informing her that she could no longer meet Village officials in person without an appointment. (R. 20, Am. Compl. ¶¶ 52-53, 79.) Specifically, Plaintiff alleges that, as a result of this letter, she "felt intimidated and deterred from pursuing her rights." (*Id.* ¶ 53.) She, however, fails to plead any plausible facts that rebut the Village's assertions about her unprofessional conduct, and she does not plead that the Village Defendants lacked any rational basis to send her the letter. Accordingly, Plaintiff fails to allege facts negating conceivable, rational grounds for the Village Defendants' letter. Therefore, the Village Defendants' alleged intimidation of Plaintiff based on the letter cannot give rise to a class-of-one claim. *See Miller*, 784 F.3d at 1121.

Finally, that the Village Defendants allegedly "obscured" the O'Dempseys' zoning violations likewise cannot give rise to a class-of-one claim. This claim is based on the Village Defendants' alleged "cooperation" with the O'Dempseys to revise construction plans, and the Village Defendants' alleged "cooperation" with the O'Dempseys "to obscure the illegal nature" of the O'Dempseys' planned house. (R. 20, Am. Compl. ¶¶ 59, 62.) Beyond conclusory allegations, Plaintiff, however, does not allege any specific act of cooperation on the part of the Village Defendants and even if she did, she fails to plead facts showing that she was the "target" of the Village Defendants' alleged cooperation with the O'Dempseys or that she "suffered harm uniquely intended for" her. *See Jackson*, 612 F. App'x at 846-47. Plaintiff does not plead how or why the Village Defendants allegedly cooperated with the O'Dempseys to revise the construction plans, and thus fails to plausibly negate "any reasonably conceivable state of facts that could provide a rational basis for" the Village Defendants' actions. *Miller*, 784 F.3d at 1121 (citation omitted). It is entirely conceivable that the Village Defendants communicated with the O'Dempseys to help them achieve compliance, rather than skirt, the Village's zoning ordinances. The Court, therefore, dismisses Plaintiff's equal protection claim.

Plaintiff contends that she sufficiently pleads that the Village Defendants acted without a rational basis, and she likens this case to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923), and *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County*, 488 U.S. 336 (1989). (R. 35, Resp. at 5-8.) As noted above, however, the Court disagrees that Plaintiff sufficiently alleges that the Village Defendants' lacked any rational basis to issue the building permit, and without more, Plaintiff's quarrel with the Village Defendants' interpretation of zoning ordinances cannot give rise to a class-of-one claim. *See Reget*, 595 F.3d at 696-97; *see also Jarmuth v. City of Chicago*, 43 F.

10

Supp. 3d 889, 894 (N.D. Ill. 2014) (dismissing class-of-one claim where "Plaintiff's equal protection claim is that Defendants largely ignored his complaints, his research, and his interpretation of the law").

In addition, this case is not analogous to the cases cited by Plaintiff. In *Olech*, the U.S. Supreme Court reversed the dismissal of a class-of-one claim because the complaint alleged that the defendant municipality had required the plaintiffs to obtain a 33-foot easement to connect their property to the municipal water supply, even though the municipality only required a 15-foot easement for other similarly-situated property owners. *Olech*, 528 U.S. at 565. Unlike *Olech*, Plaintiff fails to allege any action directed towards her personally as opposed to action favoring the O'Dempseys. (*See* R. 20, Am. Compl. ¶ 79.) Plaintiff also does not allege similarly-situated property owners who voiced a disagreement with the Village Defendants' interpretation of zoning ordinances and were treated differently. *See Jarmuth*, 43 F. Supp. 3d at 894 ("Even if Defendants refused to give Plaintiff a hearing, argued with him on the phone, and generally frustrated his efforts to stall issuance of the liquor license, these actions do not indicate that Defendants' conduct toward Plaintiff differed from the norm."); *Oxford Bank & Tr. v. Vill. of La Grange*, 879 F. Supp. 2d 954, 967-68 (N.D. Ill. 2012) ("The plaintiff must at least show that he was arbitrarily or irrationally targeted for unfavorable treatment."). Instead, she alleges that she is similarly situated to property owners who abut a property that requires a variance. (R. 20, Am. Compl. ¶ 87.) This allegation misses the mark, because the acts she complains of do not involve the Village Defendants requiring the O'Dempseys to secure a variance, but more precisely involve the Village Defendants' alleged failure to enforce zoning ordinances against the O'Dempseys consistent with Plaintiff's interpretation of those ordinances. Therefore, she does not allege any similarly-situated comparators like the plaintiff in *Olech*. *See Miller*, 784 F.3d at

1120 (noting that for a comparator "[t]o be similarly situated," he or she "must be identical or directly comparable to the plaintiff in all material respects"); *Monarch Beverage Co. v. Cook*, 861 F.3d 678, 682 (7th Cir. 2017) ("[I]f the plaintiff can't identify a similarly situated person or group for comparison purposes, it's normally unnecessary to take the analysis any further; the claim simply fails."). Plaintiff's allegations simply boil down to the Village Defendants' failure to sufficiently enforce zoning ordinances at her behest, which is not a basis for a class-of-one claim. *See CBS Outdoor, Inc.*, 38 F. Supp. 3d at 904-08.

*Dakota County* also bears little resemblance to this case. In *Dakota County*, the municipality taxed the plaintiff's property at 100 percent of its value and all other properties in the area at 55 percent of their value. *Dakota Cty.*, 260 U.S at 445. In sharp contrast to *Dakota County*, Plaintiff alleges no direct action taken against her that is different from others similarly situated, but instead alleges favorable treatment of the O'Dempseys that is different from the Village Defendants' treatment of other Village residents not including herself. (R. 20, Am. Compl. ¶¶ 87-88.) *Webster County* is not persuasive for the same reason. In that case, the defendant county assessed the plaintiff's property taxes in a manner that drastically departed from its assessment of similar properties. *Webster Cty.*, 488 U.S. at 338, 340-41, 346. This case is not analogous because Plaintiff has not alleged that the Village Defendants took a direct action against her that is different from how they treated other, similarly-situated Village residents. Instead, she alleges that the Village Defendants treated the O'Dempseys favorably when compared to other property owners who have constructed new houses. (R. 20, Am. Compl. ¶¶ 87-88.)

As noted above, if "class-of-one claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and

12

federal lawsuits." *Geinosky*, 675 F.3d at 747. Plaintiff's allegations simply do not fit the carefully-defined boundaries for class-of-one claims in the cases she cites, and therefore the Court dismisses her class-of-one claim with prejudice. *See Rocha v. Rudd*, 826 F.3d 905, 912 (7th Cir. 2016) (affirming dismissal with prejudice because the plaintiff's allegations defeated any plausible claim); *Bogie v. Rosenberg*, 705 F.3d 603, 616 (7th Cir. 2013) (observing that in cases where "[l]eave to amend could not avoid" dismissal, "dismissal with prejudice is appropriate").

## II. Counts II and III: Substantive and Procedural Due Process Claims

Next, the Village Defendants argue that the Court should dismiss Plaintiff's procedural and substantive due process claims. (R. 27, Mem. at 7-11.) The Court first turns to Plaintiff's procedural due process claim, which alleges that the Village Defendants violated Plaintiff's rights to procedural due process under the Fourteenth Amendment by failing to require variation permit hearings for the O'Dempseys' house. (R. 20, Am. Compl. ¶¶ 95-104.)

"A procedural due process claim requires a two-fold analysis," in which the Court must first "determine whether the plaintiff was deprived of a property or a liberty interest." *McMahon v. Kindlarski*, 512 F.3d 983, 987 (7th Cir. 2008). "[T]he procedures 'due' in zoning cases are minimal." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994). "When zoning decisions are confided to a legislative rather than a judicial body," as is the case here, "the affected persons have no right to notice and an opportunity for a hearing: no right, in other words, to procedural due process." *Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004).

"In evaluating what process satisfies the Due Process Clause, . . . the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on

random, unauthorized acts by state employees." *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (citation, internal quotation marks, and alteration omitted). "[A] plaintiff may challenge an established state procedure on due process grounds where it is alleged that the state procedure destroys his entitlement without according him proper procedural safeguards." *Gates v. Towery*, 331 F. Supp. 2d 666, 670 (N.D. Ill. 2004) (citation and internal quotation marks omitted). In the context of a procedural due process claim based on "random, unauthorized" acts, "the plaintiff must either avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." *Leavell*, 600 F.3d at 805 (citation and internal quotations marks omitted). "If the plaintiff has not availed herself of state remedies, she cannot state a valid procedural due process objection if she does not include a challenge to the fundamental fairness of the state procedures." *Id.* (citation, internal quotation marks, and alteration omitted).

The Village Defendants do not argue that dismissal is warranted based on the first part of the procedural due process analysis—whether the Village Defendants deprived Plaintiff of a property or a liberty interest. (R. 27, Mem. at 7.) Thus, the Court moves to "the second step, a determination of what process is due." *McMahon*, 512 F.3d at 987-88. The crux of Plaintiff's procedural due process claim is that, had the Village Defendants required the O'Dempseys to secure a variance, the Village Defendants would have held a public hearing in which she could have participated and objected to the O'Dempseys' plans. (R. 20, Am. Compl. ¶¶ 95-104). As a preliminary manner, the Village Defendants' failure to follow their procedures for issuance of a building permit cannot give rise to a viable procedural due process claim. *See Dyson v. City of Calumet City*, No. 16 C 11509, 2018 WL 509961, at *10 (N.D. Ill. Jan. 23, 2018) (dismissing procedural due process claim related to "City's improper issuance of building permit" because a

14

"state or municipality's failure to follow its own rules does not give rise to a federal due process violation" (emphasis omitted)).

In addition, applying the analytical framework for procedural due process claims set forth above, although Plaintiff does not address whether her claim is based on a "random, unauthorized" act by the Village Defendants or "established state procedures," her claim fails under either rubric. *See Leavell*, 600 F.3d at 804. To allege a procedural due process claim based on "established state procedures," she must allege that she was not afforded proper procedural safeguards. *See Gates*, 331 F. Supp. at 670. She fails to do so, and instead merely alleges that the Village Defendants should have held variation permit hearings. (R. 20, Am. Compl. ¶¶ 76-77, 95-104.) Simply put, she alleges that she was not provided the process she preferred—a variation permit hearing—rather than alleging that the process she received was inadequate, and therefore she fails to state a procedural due process claim. *Bettendorf v. St. Croix Cty.*, 631 F.3d 421, 428 (7th Cir. 2011) ("The due process clause requires that a claimant receive adequate process, not the most advantageous process available to him."); *Yaodi Hu v. City of Chicago*, No. 08 C 4108, 2009 WL 635522, at *2 (N.D. Ill. Mar. 12, 2009) (dismissing procedural due process claim where "an established procedure" existed to challenge the municipality's action and the plaintiff had not alleged that the remedy was procedurally inadequate).

For Plaintiff to allege a procedural due process claim based on a "random, unauthorized" act, she must allege that she availed herself of available state and administrative remedies or that those remedies are fundamentally unfair. *See Leavell*, 600 F.3d at 805. She fails to allege, however, that available state and administrative remedies are fundamentally unfair, and she does not allege that she availed herself of those remedies, such as filing an appeal with a zoning board

15

of appeals.[2] (R. 27, Mem. at 3-4; R. 35, Resp. at 12-14; R. 37, Reply at 9.) Thus, the Court dismisses her procedural due process claim with prejudice because it cannot survive dismissal whether it is based on a "random, unauthorized" act of the Village Defendants or inadequate "established state procedures." *See Leavell*, 600 F.3d at 804.

Plaintiff's substantive due process claim does not fare any better. While the Defendants argue that this claim should be dismissed because it is not ripe, (R. 26, Mem. at 9-11), the Court may dismiss for failure to state a claim on grounds not advanced in the Village Defendants' motion to dismiss "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997); *Lockhart v. HSBC Fin. Corp.*, No. 13 C 9323, 2014 WL 4922356, at *2 (N.D. Ill. Sept. 30, 2014) ("[T]he Court has the power at any time to *sua sponte* dismiss a claim under Federal Rule of 12(b)(6)."). "When a plaintiff brings a substantive due process claim predicated on the deprivation of a state-created property interest, she must show that the state violated some other substantive constitutional right or that state law remedies are inadequate." *Snyder v. Nolen*, 380 F.3d 279, 298 n.2 (7th Cir. 2004) (citation and internal alteration omitted); *see also LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (affirming dismissal of substantive due process claim because the plaintiff had "no independent constitutional violation on which to base its

---

[2] Under Illinois law, any "person" who is "aggrieved" by a local zoning decision may appeal to a zoning board of appeals, and judicial review of a decision from the zoning board of appeals is available. 65 ILL. COMP. STAT. 5/11-13-12, 13. Separate and apart from these procedures, Illinois state courts offer other options to challenge the actions of a public official related to a zoning matter. *See, e.g., Gil v. Wiskerchen*, No. 02-13-0294, 2013 WL 5495283, at *1 (Ill. App. Ct. Sept. 20, 2013) (observing that a party may seek a writ of mandamus "through which a public official can be compelled to perform a ministerial duty" related to zoning); *Killion v. Meeks*, No. 5-09-0376, 2011 WL 10483280, at *1 (Ill. App. Ct. May 17, 2011) (plaintiff seeking a writ of mandamus "directing the City to enforce its zoning ordinance," but losing after a trial on the merits).

substantive due process claim" and because the plaintiff failed to sufficiently allege inadequacy of state remedies).

Plaintiff's substantive due process claim is based on injury to her property, specifically, that the Village Defendants "substantially harmed" the "use and enjoyment of her property," (R. 20, Am. Compl. ¶¶ 109, 112). Thus, she must also allege an independent constitutional violation or that available state remedies are inadequate to address the Village Defendants' conduct. *See LaBella Winnetka, Inc.*, 628 F.3d at 943; *see also Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ([W]hen a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show either the inadequacy of state law remedies or an independent constitutional violation before the court will even engage in . . . deferential rational-basis review." (citation and internal quotation marks omitted)). Plaintiff, however, fails to allege any other independent constitutional violation on which to base her substantive due process claim or any inadequacy of state remedies. The Court, therefore, dismisses her substantive due process claim with prejudice. *See Snyder*, 380 F.3d at 298 n.2; *LaBella Winnetka, Inc.*, 628 F.3d at 943.

In support of her substantive due process claim, Plaintiff relies on several cases for the basic principle that a plaintiff may seek compensation for nominal damages or emotional harm arising from a deprivation of her constitutional rights. *See Carey v. Piphus*, 435 U.S. 247, 266-67 (1978) ("We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners."); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (observing that, in cases involving a deprivation of constitutional rights, "compensatory damages may include not only out-of-pocket loss and other monetary harms, but

also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." (citation, internal quotation marks, and alteration omitted)); *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (same); *Randall v. Prince George's Cty.*, 302 F.3d 188, 208-09 (4th Cir. 2002) (same); *Coleman v. Rahija*, 114 F.3d 778, 786 (8th Cir. 1997) (same). These cases, however, fail to overcome clear legal authority that requires Plaintiff to either plead another independent constitutional deprivation upon which she bases her substantive due process claim or to plead that she availed herself of state remedies. *See LaBella Winnetka, Inc.*, 628 F.3d at 943; *Snyder*, 380 F.3d at 298 n.2. The Court, therefore, finds Plaintiff's arguments unpersuasive and insufficient to avoid dismissal.

### III. Plaintiff's State-Law Claim

Plaintiff's only remaining claim, Count IV of her amended complaint, is a state-law claim against the O'Dempseys alleging violations of the ZEA. (R. 20, Am. Compl. ¶¶ 113-19.) "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, . . . which the plaintiff can then prosecute in state court." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *see also* 28 U.S.C. § 1367(c)(3). The Court finds no basis to deviate from that presumption here and declines to exercise jurisdiction over Plaintiff's ZEA claim. This claim involves issues better suited for resolution in state court, and judicial resources are not wasted by having a state court decide the ZEA claim given that this case is still in the early stages of litigation. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (considering judicial efficiency and other factors in deciding whether to exercise supplemental jurisdiction over state-law claim following disposal of claims conferring original jurisdiction); *Energy Labs, Inc. v. Edwards Eng'g, Inc.*, No. 14 C 7444, 2017 WL 818855, at *4 (N.D. Ill. Mar. 2, 2017) (dismissing supplemental, state-law claims without prejudice where all

18

federal claims were dismissed prior to trial). The Court, therefore, dismisses Plaintiff's state-law claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Village Defendants' motion to dismiss (R. 26) is GRANTED. The Court dismisses Counts I, II, and III with prejudice. Plaintiff's remaining claim, Count IV, is dismissed without prejudice for the reasons stated herein.

ENTERED: _____
**Chief Judge Rubén Castillo
United States District Court**

**Dated: May 21, 2018**